**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRUCE A. THOMAS,

        Plaintiff,

v.                                                 Case No. 3:19-cv-580-J-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.
_____

## OPINION AND ORDER[1]

### I. Status

Bruce A. Thomas ("Plaintiff"), who originally was found to be disabled by the Social Security Administration ("SSA"), is appealing the SSA's final decision finding that as of July 8, 2016, he was no longer disabled and therefore ineligible for continued disability insurance benefits ("DIB"). Plaintiff suffers from "Diabetes; Liver Disease; Degenerative Disc Disease; [and] Hypertension." Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed September 23, 2019, at 70; see Tr. at 219. The original finding of disability was made on November 2, 2012, was applicable as of August 1, 2012, and was based on "end stage liver disease, diabetes and high blood pressure." Tr. at 92-93.

The SSA conducted a review of Plaintiff's disability status, see 20 C.F.R. §§ 404.1594(a), 416.994(a), and made an initial determination on July 8, 2016 that Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed September 23, 2019; Reference Order (Doc. No. 15), signed September 24, 2019 and entered Septmeber 25, 2019.

was no longer disabled as of the same date, Tr. at 88, 70-87, 94, 95-99. Plaintiff sought reconsideration of that determination. Tr. at 101.   On reconsideration, the SSA made the same determination.  Tr. at 91.  The matter was referred to a State Agency Disability Hearing Officer, who held a hearing on July 5, 2017 and then issued a decision on July 7, 2017[2] upholding the initial determination. Tr. at 107-14; see Tr. at 115-20.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 132. On June 14, 2018, an ALJ held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 38-59.  The ALJ issued a Decision on July 5, 2018, finding that Plaintiff's disability ended on July 8, 2016. Tr. at 21-31.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 188; see Tr. at 4-5. On March 20, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On May 17, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal: 1) the ALJ "erred in finding that [Plaintiff's] chronic hepatic encephalopathy was stable and only caused him moderate limitations in concentration"; and 2) the ALJ "erroneously concluded that [Plaintiff's] peripheral neuropathy in his lower extremities would still allow him to perform the walking and standing requirements of light work on a sustained full-time basis."  Plaintiff's Brief (Doc.

---

[2] The hearing officer's decision is actually dated July 7, 2012. See Tr. at 111.  Given that the hearing was held in July 2017, and given that the decision was enclosed with a letter from the administration dated July 7, 2017, see Tr. at 115-20, it appears the "2012" date on the decision is a typographical error.

No. 20; "Pl.'s Br."), filed December 26, 2019, at 1, 11-15. Defendant on February 21, 2020 filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's contentions. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

An ALJ typically follows a five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations") when deciding whether an individual is disabled,[3] determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

When the ALJ is determining whether a disability has ended, however, the Regulations mandate following a different sequential inquiry. See 20 C.F.R. §§ 404.1594(f), 416.994(b). This sequential inquiry asks, in substance, whether the claimant (1) is engaging in substantial gainful activity; (2) has an impairment or

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

combination of impairments that meets or medically equals one listed in the Regulations; (3) has experienced medical improvement; (4) has experienced medical improvement that is related to the ability to work; (5) has experienced medical improvement, but an exception to the medical improvement applies; (6) has current impairments that when considered in combination are severe; (7) can perform past relevant work; and (8) can perform other work that exists in the national economy. See 20 C.F.R. §§ 404.1594(f), 416.994(b).[4] "When considering a case for termination or cessation of benefits, . . . the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the [p]laintiff had experienced 'medical improvement.'" Townsend v. Comm'r of Soc. Sec., No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015) (unpublished) (emphasis omitted) (citing Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir. 1982), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991); Huie v. Bowen, 788 F.2d 698, 705 (11th Cir. 1986); Carbonell v. Comm'r of Soc. Sec., No. 6:11-cv-400-Or-22DAB, 2012 WL 1946070, at *3-4 (M.D. Fla. May 11, 2012), report and recommendation adopted, No. 6:11-cv-400-Orl-22, 2012 WL 1946072 (M.D. Fla. May 30, 2012)).

Here, the ALJ found as follows:

1.   The most recent favorable medical decision finding that [Plaintiff] was disabled is the determination dated November 1, 2012. This is known as the "comparison point decision" [("CPD")].

2.   At the time of the CPD, [Plaintiff] had a medically determinable impairment of chronic liver disease that met section 5.05A of 20 [C.F.R.] Part 404, Subpart P, Appendix 1.

---

[4] The SSI Regulation, 20 C.F.R. § 416.994(b)(5), does not include the substantial gainful activity step.

- 4 -

> 3. Through the date of th[e D]ecision, [Plaintiff] has not engaged in substantial gainful activity.
>
> 4. The medical evidence establishes that [Plaintiff] did not develop any additional impairments after the CPD through the date of th[e D]ecision. Thus, [Plaintiff] continued to have the same impairments that he had at the time of the CPD.

Tr. at 23 (emphasis and citations omitted).

The ALJ then engaged in the rest of the steps in the sequential inquiry. At step two, the ALJ determined that "[s]ince July 8, 2016, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ found that "[m]edical improvement occurred on July 8, 2016." Tr. at 23 (emphasis and citation omitted).

At step four, the ALJ found that Plaintiff's "medical improvement is related to the ability to work because, by July 8, 2016, [Plaintiff] no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD." Tr. at 23 (emphasis and citation omitted). At step five, although not explicitly stated, it can be inferred from the Decision that the ALJ found no exceptions apply to the medical improvement. At step six, the ALJ found that "[s]ince July 8, 2016, [Plaintiff] has continued to have a severe impairment or combination of impairments." Tr. at 24 (emphasis and citation omitted).

Then, the ALJ found that as of July 8, 2016, Plaintiff has had the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; never balance; occasionally stoop, kneel, crouch, and crawl;

>frequent handling and fingering bilaterally; no concentrated exposure to extreme heat or cold, humidity, moving mechanical parts, or unprotected heights; the individual is limited to performing simple tasks with little variation that take a short period of time to learn (up to and including 30 days), and; the individual is able to deal with the changes in a routine work setting.

Tr. at 24 (emphasis omitted).

At step seven, the ALJ relied on the testimony of the VE and found that "[s]ince July 8, 2016, [Plaintiff] has been unable to perform past relevant work" as a "heavy truck driver" and a "truck driver." Tr. at 29 (some emphasis and citation omitted). The ALJ then proceeded to step eight and, after considering Plaintiff's age ("a younger individual"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "[s]ince July 8, 2016, . . . [Plaintiff] has been able to perform a significant number of jobs in the national economy," such as "agricultural produce sorter," "office helper," and "shipping and receiving clerk." Tr. at 29-30 (some emphasis and citation omitted). The ALJ concluded that Plaintiff's "disability ended on July 8, 2016, and [Plaintiff] has not become disabled again since that date." Tr. at 31 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to cessation of disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). The key is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." Simpson, 691 F.2d at 969. It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

In a cessation of benefits case, "there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability." McAulay v. Heckler, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam) (citation omitted). "Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). To make the required finding of medical improvement prior to terminating benefits, an ALJ must "evaluate the medical evidence upon which [the claimant] was originally found to be

disabled," and compare it with the newer medical evidence. Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984); see also Simone v. Comm'r of Soc. Sec. Admin., 465 F. App'x 905, 908 (11th Cir. 2012) (citing McAulay, 749 F.2d at 1500; 20 C.F.R. § 404.1594(c)(1)).

Here, Plaintiff concedes that his "cirrhosis may have been considered to be stable at some points." Pl.'s Br. at 11. Plaintiff contends, however, that the ALJ failed to take into account that, after the CPD, Plaintiff's "condition worsened due to hepatic encephalopathy." Id. Plaintiff argues the ALJ "appears to have presumed that cirrhosis was the same as hepatic encephalopathy." Id. As a result of the hepatic encephalopathy, states Plaintiff, he experiences episodes of confusion, which were noted by Nicholas Peterkin, M.D. in July 2016. Id. at 12; see Tr. at 938. Plaintiff also discusses various notations of elevated ammonia levels, which he contends are consequences of impaired liver function and can be neurotoxic. Pl.'s Br. at 12-13 (citing Tr. at 954, 946, 1099, 1228). Plaintiff summarizes his testimony regarding forgetfulness and confusion. Id. at 13. Finally, he points out that Kyle P. Etzkorn, M.D., wrote in June 2018 that Plaintiff was progressively declining due to chronic hepatic encephalopathy. Id. (citing Tr. at 1228). Plaintiff concludes, "Due to the ALJ's failure to properly analyze the extent of [Plaintiff's] declining mental status consistent with fluctuating . . . ammonia levels, [Plaintiff] respectfully requests that the Court remand his case for proper analysis of the impact of his hepatic encephalopathy on his mental functioning." Id. at 14.

A review of the ALJ's Decision shows that he thoroughly considered Plaintiff's hepatic encephalopathy. First, the ALJ found "liver disease with encephalopathy" to be a severe impairment. Tr. at 24. The ALJ then specifically recognized Plaintiff's wife's contention in 2016 that Plaintiff "had elements of confusion occurring at home from time to

time." Tr. at 24 (citing Exhibit 14F at 17 (Tr. at 938)).  The ALJ stated that Plaintiff's physician in 2016 (Dr. Peterkin[5]) noted an elevated ammonia level.  Tr. at 24; see Tr. at 938.  The ALJ then discussed certain evidence showing Plaintiff had "no impairment of memory."  Tr. at 24 (citing Exhibits 20F (Tr. at 996-1062), 24F (Tr. at 1160-75), 25F (Tr. at 1176-98)); but see Tr. at 1162 (noting unspecified memory issues).  The ALJ discussed Plaintiff's testimony.  Tr. at 24; see Tr. at 41-55 (Plaintiff's testimony).  Then, the ALJ found Plaintiff "is moderately limited for understanding, remembering, and applying information, and for concentration, persistence, and maintaining pace."  Tr. at 24.  The ALJ further found that Plaintiff "is mildly limited for interaction with others and for adapting and managing himself."  Tr. at 24.  The ALJ assessed an RFC consistent with those findings. Tr. at 24.

Later in the sequential process, the ALJ continued to analyze the hepatic encephalopathy.  The ALJ comprehensively discussed Plaintiff's testimony about his forgetfulness, Plaintiff's wife's statements about Plaintiff's confusion, and medical evidence documenting complaints of occasionally slow mentation.  Tr. at 25.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence,"[6] Tr. at 27, a finding with which Plaintiff does not quarrel.

---

[5] The ALJ did not refer to Dr. Peterkin by name, but Dr. Peterkin was Plaintiff's physician during 2016 and noted the elevated ammonia level on July 20, 2016.  See Tr. at 938.

[6] "[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ also specifically discussed, and assigned "little weight" to, the opinion of Dr. Etzkorn in June 2018 that Plaintiff "was expected to worsen and would ultimately need re-evaluation at a transplant program" and that Plaintiff "could not drive [or] function in a work environment."  Tr. at 28; see Tr. at 1228.  The ALJ recognized Dr. Etzkorn's notation that Plaintiff "continued to have breakthrough encephalopathy despite treatment with Xifaxan, and currently required lactulose in addition to the Xifaxan."  Tr. at 28; see Tr. at 1228.  But, the ALJ found Dr. Etzkorn's opinion to be both speculative of a future condition and inconsistent with examination reports showing intact memory.[7]  Tr. at 28

---

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

[7]     The Regulations instruct ALJs how to properly weigh a treating physician's opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259 (11th Cir. 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

(citing Exhibits 20F (Tr. at 996-1062), 21F (Tr. at 1063-1112), 24F (Tr. at 1160-75)). Plaintiff does not challenge the assignment of little weight to Dr. Etzkorn's opinion.

The Decision shows that the ALJ, indeed, considered Plaintiff's hepatic encephalopathy. The ALJ's findings in this regard are supported by substantial evidence and need not be disturbed.

Plaintiff next contends the ALJ "erroneously concluded that [his] peripheral neuropathy in his lower extremities would still allow him to perform the walking and standing requirements of light work on a sustained full-time basis." Pl.'s Br. at 14 (emphasis omitted). In making this argument, Plaintiff mainly relies upon his testimony about the effects of his impairments. Id. at 15 (citing Tr. at 42, 45, 48, 50-53). Plaintiff fails to recognize, however, that the ALJ considered his testimony on the whole and particularly as it related to the effects of Plaintiff's peripheral neuropathy: "[Plaintiff] testified to limited ability for sustained sitting, standing, and walking due to pain, but the record shows that he reported to Dr. Peterkin in follow up that he was pain-free while on Oxycodone, which is documented as currently prescribed." Tr. at 27 (citing Exhibit 14F at 8 (Tr. at 929)). Overall, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence." Tr. at 27.

The ALJ also discussed certain primary care notes documenting no edema in Plaintiff's extremities. Tr. at 27-28 (citing Exhibit 25F at 10 (Tr. at 1185), 20F at 35 (Tr. at 1030)); see also Tr. at 1177, 1179, 1182. Ultimately, the ALJ recognized that Plaintiff's diabetic peripheral neuropathy and other impairments "support[] limitation to light exertion" along with other restrictions regarding ladders, balancing, ramps, stairs, stooping,

kneeling, crouching, and crawling. Tr. at 28. The ALJ's findings are supported by substantial evidence.

Overall, the ALJ properly and adequately evaluated the medical evidence regarding the original finding of disability and compared it to the newer medical evidence. Further, there is substantial evidence of improvement to the point that Plaintiff is no longer disabled.

## V. Conclusion

The ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 22, 2020.

*[signature: James R. Klindt]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record